**JONES et, v. MIDDLETOWN (City) et.**

Common Pleas Court, Butler County.

No. 61035.   Decided January 5, 1948.

On the Merits February 27, 1950.

Doyle, Lewis & Warner, Toledo, C. W. Elliott, Middletown, Fitton, Pierce & Black, Hamilton, for plaintiffs.
Fred J. Schatzmann, Middletown, for defendants.

## OPINION

By CRAMER, J.

This cause is before the Court upon a demurrer to the petition filed by the defendants on the following grounds:

(1) That there is a misjoinder of parties defendant.

(2) That it appears on the face of the petition that the facts therein contained do not constitute a cause of action in favor of the plaintiffs and against any of the defendants.

Oral arguments, together with exhaustive and able briefs and memoranda, were made and submitted by counsel for the parties, in support of and contra to, the demurrer.

Plaintiffs by this action seek to recover damages from the City of Middletown, hereinafter referred to as the City, resulting from a breach of contract between them and also to have the Court declare a trust and equitable lien upon certain funds received by the defendants from the Federal Works Agency for the purpose of paying for the services of plaintiffs, namely, engineering services, and to enjoin all of the defendants from paying out and dissipating (as claimed) said funds.

The substantive and essential allegations of the petition are as follows:

That plaintiffs are registered professional engineers with their office at Toledo, Ohio.

That the City of Middletown is a municipal corporation and the City Commission of that city is a board established by the charter of the City and under said charter exercises all legislative and executive functions.

The individually named defendants were on May 29, 1946 and ever since members of the City Commission of the City and Marvin Clark the Chairman thereof.

That the defendant Harry Campbell is the Auditor of the City.

That on May 29, 1946 an ordinance, by number 2571, was enacted by the City Commission which authorized its Chairman to execute a contract on behalf of the City with the plaintiffs.

Said ordinance was entitled "an ordinance authorizing the Chairman of the City Commission to execute a contract on behalf of the City of Middletown, Butler County, Ohio with the engineering firm of Jones and Henry, Toledo, Ohio, and declaring an emergency." The ordinance further provided that the doing of the things therein contemplated constituted an emergency. That it provided for the immediate preservation of peace, health and safety of the City by providing for plans and specifications for intercepting sewer and sewage treatment facilities of the City.

The Chairman was authorized to execute a contract with the plaintiffs and a copy of the contract was attached to and made a part of the ordinance.

The ordinance, being declared to be an emergency measure for the reasons above set out, provided that it should take effect and be in force from and after its adoption and publication.

The ordinance was unanimously adopted by the City Commission on the date aforesaid and was duly published on the 6th day of June, 1946, including the copy of the contract incorporated therein.

Thereafter the plaintiffs and the City acting by its Chairman duly executed the contract in the identical words and figures contained in the copy of such contract made a part of the ordinance.

The petition further recites the provisions of the ordinance and contract. The same provided that the plaintiff engineers were to be paid for their services a sum equal to four percent of the estimated cost of the improvements.

It is further alleged that the ordinance contract provided that the City had made application to the Federal Works Agency for funds to pay for such services and that the contract should not be in force and effect until after the Federal Works Agency had approved the City's application and arrangements to secure funds for such payment with the F. W. A. had been completed.

The plaintiffs allege further that within one year after the execution of said contract and before the breach thereof they began to perform the services provided in the contract on their part to be performed by proceeding with the engineering work

connected with the preparation of plans and specifications for the sewers, etc. They completed the basic design in data and had begun detailed construction drawings and general specifications.

That at the request of the defendants and in reliance upon said contract and without compensation other than that provided in said agreement to be paid them, in the event the City's application to the Federal Works Agency for funds with which to carry out the engineers' work should be granted, plaintiffs prepared certain documents and performed certain services required for procuring such funds from the Federal Works Agency. That the defendants accepted such services and that as a result thereof in October 1946 the Federal Works Agency granted to the City, for purpose of paying for the engineering work provided in the contract to be done by plaintiffs the sum of $49,000.00, and on or about March 10, 1947, $24,500.00 of said sum was actually paid to the City by the Federal Works Agency.

That in its application to the Federal Works Agency and to induce it to make said allocation and payment and as one of the representations upon which such funds were granted, the defendants represented that the plaintiffs would do the work for which said sum was applied and that the plaintiffs had been employed for such service.

It is further alleged that the plaintiffs began performance of the work for which they were employed in said contract within one year from its date. That they have an equitable lien upon the funds so received from the Federal Works Agency and that said sum so allocated is impressed with a trust and held by the City for the payment of the amount provided in said contract to be paid the plaintiffs.

It is further alleged that notwithstanding the passage of said ordinance and contract with plaintiffs, and that the same were in full force and effect, the defendants on or about the 23rd day of April, 1947 purported to enact an emergency ordinance authorizing and directing the Chairman of the City Commission on behalf of the City to enter into a contract with another firm of engineers, namely, Floyd G. Browne and Associates, for the performance of the same services which the defendants had contracted with plaintiff to perform. That thereupon the City acting by the Chairman of the Commission did execute a purported contract employing Browne and Associates to perform the same services and to pay them therefore from said sum of $49,000.00 so allocated by the Federal Works Agency and paid to said City. That said contract with Browne and Associates was made with full knowledge on the

part of the defendants and said Browne and Associates of the enactment of said ordinance No. 2571 and of the fact that the contract thereby authorized with plaintiffs had been executed and was in full force and effect.

It is further claimed by plaintiffs that on or about the 14th day of June, 1947 the defendants wholly repudiated their contract with them and refused to permit plaintiffs to proceed in performance thereof. That the plaintiffs had proceeded in good faith to perform the obligations of the contract and are ready, able and willing to complete the same when and if defendant will permit them to do so.

That but for such action of the defendants, plaintiffs would have earned by the performance of said contract the sum of $46,600.00, in which sum they claim to have been damaged, and seek judgment therefor together with the equitable relief hereinbefore referred to.

The Court will take up first, the defendants' contention that there is a misjoinder of parties defendant. In this connection it is claimed that there is a misjoinder since the City, a municipal corporation, the City Commission, its governing body, are joined as party defendants with the individual members of the City Commission. That the individual members of the City Commission are not proper parties because their official action is merged into the official action of the board, itself as an entity. In view of the fact that the Code, particularly §11255 GC thereof, permits joinder of persons who are necessary parties to a complete determination of questions involved, and further in view of the equitable nature of the relief asked for here, the Court is of the opinion that there is no misjoinder, at least such as calls for sustaining a demurrer on that ground.

Furthermore, this particular ground of the demurrer is not being particularly urged by the defendants.

This ground of the demurrer will, therefore, be overruled.

In support of the defendants' claim that the petition does not set out facts sufficient to constitute a cause of action on behalf of the plaintiffs against them, it is contended that:

(1) No recovery is permitted in this state against a municipality upon an implied contract or on quantum meruit, and that therefore an express contract entered into in compliance with all applicable statutes must be alleged.

(2) Plaintiffs, having alleged an express contract, have failed to allege full compliance with all applicable statutes.

(3) That no allegation is set out in the petition alleging the execution of a certificate of availability of funds with which to discharge the obligation of the City under the contract, by the fiscal officer of said City.

334

(4) That if plaintiffs are relying upon §3982-2 GC (popularly referred to as the engineers statute and which apparently dispenses with the necessity of such certificate of availability of funds) they have failed to bring themselves within its provisions since the petition fails to disclose strict and specific compliance with that statute.

In connection with this contention of the defendants it is asserted that the plaintiffs have failed to allege that the City strictly complied with the mandatory provisions of §3982-2 GC. That under this section it is the mandatory duty of the legislative authority of the City desiring to make such a survey (as herein alleged was made) to adopt a resolution declaring the purpose and necessity therefor. That the petition is fatally defective because it does not appear therein that the City adopted such a resolution.

(5) That the ordinance authorizing the contract, even though it recites the doing of the things therein contemplated constituted an emergency and declared as to the necessity for the employment of engineers and even though passed as an emergency measure is wholly insufficient to take the place of the resolution of necessity which should have been adopted by the Commission. This argument is based upon the claim that statutory requirements limit ordinances and resolutions to a single subject and that the subject be clearly expressed in the title. Sec. 4226 GC.

(6) That this contract was invalid at the time entered into in that it was not to go into full operation during the term for which all the members of the City Commission were elected. Such invalidity is asserted by reason of §4241 GC, which provides as follows: "The council shall not enter into any contract which is not to go into full operation during the term for which all the members of such council are elected." In this connection the Court's attention is called to the following language contained in the contract, found in paragraph eight thereof: "It is mutually understood and agreed that this contract shall not be in force and effect until the Federal Works Agency has approved the City's application and arrangement to secure funds for said engineering work from the Federal Works Agency has been completed." It is claimed by the defendants that this provision of the contract creates a condition upon which the effectiveness of the entire contract depends. That even though that condition could be fulfilled (as a matter of fact it was fulfilled) during the term for which all the members of the Commission were elected, nevertheless judged by §4241 GC at the time the contract was entered into it was invalid.

The position taken by the plaintiffs respecting the foregoing contentions of the defendants and support of their claim that their petition states a cause of action is as follows:

(1) **Sec. 5625-33 GC** (providing for certificate of the auditor of availability of funds being attached to the contract) does not apply to contracts employing an engineer on a percentage basis even though the consideration for such services would be payable from the city's general fund.

(2) That the foregoing section is not applicable to a contract for the expenditure of money unless such expenditure is from the general fund of the City raised by taxation; therefore it does not apply to the case at bar for the reason that it appears from the petition that the contract was contingent on the grant of funds by the F. W. A. and that therefore the expenditure (to pay these plaintiffs) is not from general funds of the City raised by taxation.

(3) That plaintiffs have substantially complied with the provisions of §3982-2 GC (this Section dispenses with the necessity of compliance with §5625-33 GC).

(4) That the provisions of §3982-2 GC are not mandatory.

(5) That even if such provisions of said Section were mandatory, a complete compliance therewith is shown by the averments of the petition.

(6) That this ordinance does not violate the requirements of the statute respecting limiting ordinances and resolutions to a single subject and that the subject be clearly expressed in the title.

(7) That this contract does not come within the inhibitions contained in §4241 GC.

We deem it advisable to make, at the threshhold of this discussion and determination of the interesting questions raised by the demurrer (second ground thereof), some observations which we believe pertinent.

The City had the power to enter into this contract—the invalidity of which it now seeks to sustain and behind which (invalidity) it seeks refuge.

We assume, since the contract was for the benefit of the contracting parties, each fully intended to carry it into completion and neither desired to over-reach the other either in the course of its discharge or in the results to be obtained.

We are aware of the fact that contracts of a City—made in direct violation of the law—impose no liability upon it; that persons who deal with municipal bodies for their own profit are required to take notice—at their peril—of limitations upon their (Cities) powers which the law embodies.

However, we know of no rule of law which gives municipalities, merely because they are such, more freedom from escaping the consequences of a bad—though legal—bargain than that accorded individuals.

In the instant case no third person as tax-payer or otherwise, seeks to declare this contract invalid. Here one of the contracting parties, the City, seeks to escape liability from legislation and its resulting instrument—the contract—prepared, enacted and executed by it and upon which and the validity of which the other contracting party relied and performed under.

Needless to state this Court, in the interests of justice, will require the city, before relieving it of its obligation thus created, to strictly prove the law is as it claims it to be.

We now proceed to a consideration of the basis of defendant's attack upon the petition, bearing in mind, of course, that the averments of the petition are admitted.

The defendants' assertion that no recovery can be had against a municipality on quantum meruit is well established in this state. **28 O. Jur., pages 924-925.**

It is likewise true that plaintiffs' petition must set forth facts showing that the contract here in question was executed and entered into in compliance with all the statutes applicable thereto.

Is the fact that plaintiffs have failed—as they have—to aver that a certificate of availability of funds—with which to discharge this contract—was executed by the fiscal officer of the City as required by §5625-33 GC, fatal to plaintiffs?

**Sec. 5625-33, paragraph (d) GC** provides in substance that no subdivision or taxing unit shall make any contract involving the expenditure of money unless there is attached thereto a certificate of the fiscal officer of the subdivision that the amount required to meet the same has been lawfully appropriated for such puprose and is in the treasury or process of collection to the credit of an appropriate fund free from any previous encumbrances. It further provides that every such contract made without such a certificate shall be void.

We are of the opinion that compliance with the aforementioned statute is not required nor is the same applicable when the contract calls for the expenditure of money from sources other than the general funds of the City which funds are raised by taxation.

In other words the statute applies only to such contracts as involve the expenditure of funds derived directly from taxation and not to contracts involving the expenditure of funds raised in other ways and which cause no deficit in the general

fund. See 28 O. Jur., section 527, page 853 et seq. Also Vol. 33 O. Jur., page 661 et seq, and the numerous authorities therein cited.

The defendants assert in their brief that "there is nothing in the contract which says it is to be paid out of any other fund" (referring to the general fund).

It is their contention that the contract does not provide that the plaintiffs' fees are to be paid out of money provided by the Federal Works Agency—merely that the contract is not to go into effect until the City obtains the federal grant. In support thereof they direct our attention to paragraph 8 of the contract which provides: "Whereas the City has made application to the Federal Works Agency for funds with which to carry out the engineering work specified herein, it is mutually understood and agreed that this shall not be in force and effect until after the Federal Works Agency has approved the City's application and arrangements to secure funds for said engineering work from the Federal Works Agency has been completed."

It is our conclusion that the foregoing portion of the contract definitely and clearly reveals that the source from which the funds were to be obtained to pay plaintiffs for their services was the Federal Works Agency. No other meaning can. be given the following: "For funds with which to carry out the engineering works specified herein" without doing violence to the meaning conveyed by plain and unambiguous words.

Then too, the petition alleges that after executing this contract the City contracted with other engineers for the same services and to pay them therefor from the sum allocated to the City by the Federal Works Agency. A further indication— if one is needed—as to the source (other than the general fund) from which such engineering services were to be paid.

We have no right to assume—for the purpose of this demurrer—that eventually the City might be required to re-pay the Federal Works Agency out of the general fund. Any assumption should be to the contrary in view of the petition's averment that such funds were granted to the City.

Having concluded that §5625-33 GC is inapplicable because the funds to discharge the contract are not to come from the general fund, it is unnecessary to pass upon plaintiffs' claim that the fiscal officer's certificate is unnecessary in view of the decision of the Supreme Court in Village of Mayfield Heights v. Irish, 128 Oh St, page 329, 191 N. E. 129, 130.

However, in passing we make the observation that the Irish case, supra, in view of the fact that Irish was employed as a

public officer by and on the current pay-roll of the Village he sued, is not decisive of our question. It is to be noted that in the Irish case the Court noted the following excerpt from the provisions of §5625-33 GC, "the term 'contract' as used in this section, shall be construed as exclusive of current pay rolls or regular employees and officers" in reaching its decision.

It is further urged that even if §5625-33 GC is applicable to the facts as alleged and the Auditor's certificate is required, nevertheless the petition is good as against this demurrer because compliance with §3982-2 GC is averred. The pertinent provisions of that section are as follows: "It shall be the duty of the legislative authority of such political subdivisions desiring to make such a survey (surveys of water works, sewage system, etc.) to adopt a resolution declaring the purpose and necessity therefor. * * * and the certificate of such fiscal officer as provided in §5625-33 GC shall not be required."

It is to be noted that under this section compliance with §5625-33 GC is specifically dispensed with. However, the defendants assert that the petition fails to meet the mandatory requirements of §3982-2 GC because of the absence therefrom of allegations showing the adoption by the City of a resolution declaring the purpose of and necessity for such engineering survey.

The petition discloses that no resolution as such was adopted by the City. This, it is claimed is fatal to plaintiffs' pleading since the language of the section is mandatory.

Plaintiffs insist, first, that such a resolution in fact was adopted (by virtue of the passage of the ordinance showing such purpose and necessity), and second, that the language of the section is not mandatory but directory only.

In fact plaintiffs' position amounts to a stand that irrespective of its nomenclature as an ordinance the legislation adopted was in fact the resolution since its subject matter determines its character rather than the name given to it. Ample respectable authorities are advanced by plaintiffs in support of that claim. See **Vol. 28, O. Jur., 435 et seq.** Also 2 McQuillan (Municipal Corporations) page 657 et seq.

We are of the opinion that, if a resolution declaring the purpose and necessity be required, the act of the City (by the legislation enacted) setting forth as it does in clear language its purpose and necessity through the emergency provisions and by the adoption of the language of the contract by incorporation which describes the purpose of employing engineers and the necessity therefor, meets the statutory requirements irrespective of the nomenclature given the act.

We find ourselves unable to agree with the defendants' assertion that "the mere formal statement of an emergency providing for the immediate 'preservation of peace, health and safety of the City of Middletown' is hardly adequate as a requirement of a resolution declaring the necessity and purpose therefor." In our opinion, such an expression well states a necessity and purpose.

It is difficult to conceive that separate and distinct enactments (a resolution and an ordinance) are required by this statute. Especially is this true since this section of the Code provides no limit of time to expire between the declaration of the necessity and purpose of employing engineers and their actual employment by execution of a contract with them.

There is no magic in setting forth in two separate enactments that which can well be and is permitted to be set forth in one. We are not here concerned with a referendum period nor a separation of enactments so as to permit of a referendum for that question is not properly before us.

In our opinion the application of the principle of estoppel should be applied (even though ordinarily not applicable against a municipality) in reference to this particular contention. See Vol. 28 O. Jur., page 926 et seq.

In view of our conclusion that the plaintiffs have averred compliance with this section under discussion, it becomes unnecessary to pass upon the question raised as to whether such provisions thereof are mandatory or directory.

Suffice it to state that from the many authorities cited by the parties, we are inclined to the position that the same are not mandatory. At least an averment showing a substantial compliance with these provisions is, in our opinion, sufficient to meet the demurrer.

We are unable to agree with the argument advanced by the defendants that the enactment must fall because it violates the statute (§4226 GC) limiting ordinances and resolutions to a single subject and that the subject be clearly expressed in the title.

We do not believe that here there is a "union in one act of diverse, incongruous and disconnected matters, having no relation to or connection with each other" which the Supreme Court of Ohio in Heffner v. City of Toledo, 75 Oh St 413, at page 426, 80 N. E. 8, at page 10, condemns.

Rather it meets the approval of those authorities which permit "the inclusion of matters which are germane to the general subject expressed in the title." See 28 O. Jur., page 439 and citations supporting the text.

Uniting in one enactment the thing to be done with the

declaration of purpose and necessity for doing it, seems to us a perfect, natural and logical union.

At any rate such unity does not produce the result of "effecting its passage by uniting in its support all those in favor of any of such (diverse subjects or measures) and to prevent the adoption of ordinances by the votes of councilmen ignorant of their contents. See **28 O. Jur., page 439; 75 Oh St at page 413,** 80 N. E. 8.

It is further asserted that the contract in question is invalid since by its very terms it was "not to go into full operation during the term for which all the members of such council are elected." That therefore it violates §4241 GC which provides as follows: "The council shall not enter into any contract which is not to go into full operation during the term for which all the members of such council are elected."

Sec. 3525 GC, provides in part as follows: "When a municipal corporation is organized by the election of its officers, notice of its existence shall be taken in all judicial proceedings." We, therefore, presume that we are to take judicial notice of the terms of all the members of the City Commission of Middletown.

The question, however, still remains as to whether or not this contract is to go into full operation during the term for which all members of the City Commission are elected.

It has been held that the foregoing restriction as to contracts, §4241 GC, does not mean that performance of every term or stipulation of the contract shall begin during the term of such of the members in office at the time the contract is entered into. Nor does it require that the contract be completed during such period. The authorities lead us to the conclusion that a contract goes into "full operation" within the meaning of this section upon its execution.

It is claimed, however, that the operation of this contract depended upon a contingency, namely, the allocation to the City of the F. W. A. grant and that even though the happening of the contingency might have occurred during the term of such Commissioners, still the contract would be invalid because it is inhibited by §4241 GC.

The plaintiffs have drawn a most interesting analogy between this section and §8621 GC, which section provides that "No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof." They contend that the construction placed upon §8621 GC by the Courts applies with equal force to §4241 GC. And that the Courts have held that before a contract comes within the terms of §8621 GC it must

contain upon its face provisions which make it utterly impossible to perform the contract within one year; that contracts which may be performed within one year, or which are to be performed upon a contingency which might conceivably occur within one year, are not within the terms of §8621 GC. This construction they claim is supported by the text and authorities in support thereof found in 19 O. Jur., pages 638 and 639.

It is our conclusion that §4241 GC should bear the same construction which the Courts have placed upon §8621 GC, even though this latter section is a part of the statute of frauds. It is our further conclusion that it was not only possible for this so-called contingency to occur within the term of the members of the City Commission but from the allegations of the petition it is revealed that such contingency actually did occur within the term of all of them. We believe that the contract went into operation upon its execution and that the contingency therein provided did not prevent it being effective in that respect, but merely, if it did not occur, would cause its operation to cease. Our conclusion, therefore, is that this contract does not fall within the inhibitions of §4241 GC.

It is further intimated that aside from §4241 GC, the provisions of the contract—those which provide that it shall not be in force and effect until after the F. W. A. application has been approved—destroy the validity thereof. That such provisions in effect bind the City to employ plaintiffs in futuro and commit it to the employment of the plaintiffs to the exclusion of any one else.

In reference to this claim we know of no rule of law, and have been cited to none, which makes such a contract invalid merely because it contains a contingency such as that contained in the one before us. Furthermore, defendants' speculation as to the effect upon this contract of disallowance or rejection of the City's application to the F. W. A. is answered completely, in our opinion, by the averments of the petition which reveal that the application had been granted and partial payment made thereunder by the Federal Agency to the City.

The defendants have briefed the question of damages claimed by plaintiffs. They take the position that the plaintiffs are not, under the law, permitted to recover as damages, the full amount of their compensation provided in the contract. This issue was raised by the Court itself in the course of the oral argument, merely by inquiring of counsel as to the measure of damages in a case of this kind. However, we are of the opinion that this particular matter has really no bearing upon

whether or not plaintiffs have stated a cause of action. The question of the method of calculating plaintiffs' damages, while a most interesting one, would not arise until after the case proceeds to trial and a cause of action is made out. We will therefore give no consideration to this particular matter at this time.

The Court concludes that the plaintiffs have alleged facts sufficient to constitute a cause of action against the defendants and therefore the demurrer will be overruled.

On the Merits

This cause was submitted to the court without the intervention of a jury and it is now before us upon the pleadings and the evidence. Counsel have furnished the court with extensive briefs.

The plaintiffs, at the time the action was filed, were Harvey P. Jones and Thomas B. Henry, professional engineers, partners doing business under the name and style of Jones and Harvey. During the pendency of this cause Harvey P. Jones died and the action was revived in the name of Ina F. Jones, Executrix of the estate of Harvey P. Jones. The evidence in this cause showed that Thomas B. Henry purchased the interest of Harvey P. Jones, deceased, in the partnership and that he as such surviving partner has succeeded to Harvey P. Jones' interest in the partnership. In this opinion the plaintiffs will be referred to as they stood at the time the action was brought.

Plaintiffs seek to recover damages from the City of Middletown for breach of contract. The contract sued upon was entered into between the plaintiffs and the City of Middletown, Ohio, as a result of an ordinance adopted by the City, for that purpose on the 29th day of May, 1946. Under said contract the City employed the plaintiffs to perform engineering services in connection with the preparation of plans and specifications and doing all the necessary engineering work in connection therewith for intercepting sewers and sewage treatment in the City of Middletown. The contract fixed plaintiffs' compensation at four percent of the estimated cost of the construction.

Plaintiffs claim that the City breached this contract, prevented the plaintiffs from fully performing thereunder and repudiated the same in that a contract for the same work the plaintiffs were to perform, was awarded in April of 1947 to engineers other than the plaintiffs.

Many of the facts set forth in the petition are admitted by the City in its amended answer. Among such admissions are the following: The adoption by the City on May 29, 1946 of

the ordinance authorizing the City to enter into the contract with the plaintiffs which is sued upon; that the ordinance which included a copy of the contract, the subject of this action, authorizes the Chairman of the City Commission to exercise a contract on behalf of the City with plaintiffs in accordance with the contract attached to the ordinance; that in 1945 plaintiffs, among other things, made a preliminary study and report on the sewage system of the City under contract with the City and made certain recommendations with respect to the sewage disposal plant and estimated costs of construction of sewers, relief and intercepting, and a sewage disposal plant. It is further admitted by the City that an application was made to the Federal Works Agency of the United States Government for an allocation of funds from the government for the advance planning intercepting sewers, industrial waste sewer, and a sewage disposal plant; that on November 27, 1946 the application was approved and that an allocation for the advance planning in the sum of $49,000.00 was approved by the Federal Works Agency, and that on February 13, 1947 a check in the sum of $24,500.00 was advanced to the City. It is further admitted that the City Commission of the City of Middletown on the 23rd day of April, 1947 passed an emergency ordinance authorizing its chairman to enter into a contract with Floyd G. Brown and Associates of Marion, Ohio for the performance of said engineering work set forth in said contract.

The evidence, together with the admissions set forth in the pleadings clearly establishes the fact that the contract as pled was entered into between the plaintiffs and the City of Middletown, and that the same was repudiated and breached by the City, and the plaintiffs were thereby prevented from performing the same.

The defendants' defense to this action consists entirely in denying the validity of the contract sued upon. The defendants take the position that the invalidity of the contract which it made with the plaintiffs, precludes a recovery against them. In their amended answer and as a second defense therein, the defendants set up a number of grounds which they assert render this contract invalid and defeat plaintiffs' claim.

A demurrer was filed by the defendants on the ground that the plaintiffs' petition did not set forth facts constituting a cause of action. In support of that demurrer many claims were advanced by the defendants as to why the contract set forth in the petition had no validity and therefore plaintiffs had no cause of action. Counsel thoroughly briefed the

matters raised by the demurrer. The court was furnished with many authorities in support of and contra to the petition.

In December of 1947 this court in an opinion reviewing the authorities and the arguments advanced by the parties, held that the petition did state a cause of action and overruled the demurrer.

The defendants now reiterate their claim that the plaintiffs cannot succeed in this action because the contract admittedly made between the parties was not valid; and urge the same grounds to sustain their position which they claimed supported their position in respect to the petition not stating a cause of action. While the defendants, in their brief, now submit additional reasons (other than those urged at the time of the hearing on the demurrer) to support their claim that the contract has no legal effect and submitted some additional authorities, they rely principally upon claims heretofore made, considered, and decided by this court.

In our consideration of the demurrer we rather exhaustively treated the matters now again submitted by the defendants. No useful purpose would be served, in either reciting the arguments advanced by the defendants, or our conclusions thereon. Suffice it to say that our position now, after hearing this cause on the merits, in respect to the claimed invalidity of this contract, remains unaltered. The new matters which defendants assert under the evidence submitted, are not, in our opinion, of sufficient merit to cause us to conclude that this contract is not binding upon the defendants.

We find that the contract sued upon in this case is a valid one and that the City of Middletown is bound by it. That the City of Middletown breached the same and prevented plaintiffs from performing thereunder, and that the City is liable to the plaintiffs for the damages sustained by them.

The evidence offered by the plaintiffs, respecting the damages which they sustained, consisted of a showing as to the amount of the cost, to them, to perform the services which they were obligated to render under the contract. It was shown that this cost would have been in the sum of $23,000.00. Mr. Henry, one of the plaintiffs, testified that that sum was arrived at as a result of his experience with projects similar to the one called for by the Middletown contract, and upon his firm's accounting and record of costs for performance of similar services. These plaintiffs had a similar contract with the City of Tiffin, Ohio to perform substantially the same services called for in the Middletown contract and covering about the same period of time. The evidence showed that the cost of performing the engineering services in the Tiffin

contract, as established from the books and records of the plaintiffs, was used as a measure of determining what would be the reasonable cost to them of performing the services under the Middletown contract. The estimated cost of the Tiffin project was $1,169,000.00, while that of Middletown was $1,165,000.00; both involved intercepting sewers. Mr. Henry testified that from his experience he estimated that the work required under the Middletown contract would normally have been completed by the plaintiffs in approximately eight months.

The contract provided that the plaintiffs were to receive for their services the sum of four percent of the estimated cost of the construction of the project. This estimate, as shown by the application made by the City to the Federal Works Agency, was calculated at $1,165,000.00. Therefore, the services of plaintiffs would have called for the payment of the sum of $46,600.00 to them.

The foregoing, respecting the amount of damages claimed to have been sustained by plaintiffs, was the only evidence offered in respect thereto.

While the plaintiffs in their petition seek to recover the full contract price, namely, $46,600.00 with interest, they apparently realized that the full contract price was not the measure of damages. The evidence submitted on this question was upon the theory that the measure of damages is the difference between the contract price and the cost of performance to the plaintiffs. In other words, the measure of damages is the profit which the plaintiffs would have made had they been permitted to perform and complete the contract. This amount is arrived at in this case by giving plaintiffs the full contract price less the amount they saved by reason of the City's repudiation. The amount so saved is what it would have cost the plaintiffs to perform.

The weight of authority is to the effect that the foregoing is the proper measure of damages in a case of this kind. See Williston on Contracts, Vol. 5, Section 1363, etc.; **13 O. Jur., page 103;** Restatement of Law of Contracts, Section 338, etc.; other authorities set forth in plaintiffs' reply brief.

The defendants claim that even though this contract might be found good in other respects, that it is too indefinite as to compensation, and that the court could not with any degree of certainty ascertain what would be allowable compensatory damage. It is the City's claim that there was no actual estimate as to the cost of the project and that the plaintiffs' compensation was based upon a percentage of that cost. However, the contract calls for payment to plaintiffs ʊɪ four percent ᴏɪ the estimated cost of the construction. The

City accepted the estimated cost of the construction, which estimate was furnished by the plaintiffs to the City and the City in turn gave that estimate to the Federal Works Agency in its application for funds for the engineering work. As a matter of fact, the City did receive $24,500.00 from the Federal Works Agency, as a pre-payment of one-half · of the amount applied for, based upon the cost of construction as estimated by plaintiffs ($1,165,000.00) and accepted by the City, by which estimate it is bound, at least for the purposes of this contract. We do not find, as claimed by the City here, "that there was no figure which could be reasonably used in calculating the percentage of compensation the plaintiffs might receive or, as stated before, there were no actual estimates on the cost of the work." We further do not find that there is any merit to the City's contention that there was a variance between the pleadings and the evidence which misled the defendants to their prejudice. This claim of the defendants is based upon the fact that the plaintiffs in their petition seek to recover the full contract price but offered evidence only as to loss of profit. We fail to find how that constituted a variance. The most that could be said is that the proof failed to measure up to the full amount claimed in the petition. Furthermore, it is most difficult to perceive in what manner defendants were prejudiced by plaintiffs' failure to prove as much in damages as they claimed in their petition. If anything, such failure benefits them.

The City cites the case of **Refrigeration & Air Conditioning Institute v. Rine, 80 Oh Ap 317,** 75 N. E. 2d 473, at page 476. This is a Court of Appeals case on the question of the proper measure of damages and holds that the full contract price is not the measure of damages, but actual loss sustained. The court does say in the course of its opinion as follows: "The second item of actual damages is loss of profit, where profit was contemplated. * * * We recognize that the rule of the past was repugnant to allowance of damages for loss of profits, but such is now the case. We believe it to be now well settled that loss of profits may be an element of damages in breaches of partly performed contracts, where such profits are not too remote, are not speculative and can be shown with fair accuracy, definiteness and certainty."

We are of the opinion that here the profits plaintiff would have made are not too remote, are not speculative, and were shown with reasonable definiteness and accuracy.

The plaintiffs further claim interest upon their damages and claim the same from October 1, 1947 which is the date, on which they claim the evidence shows, they would reasonably have been expected to finally perform. It was to the

effect that they would have performed their part of the contract within eight months. October 1, 1947 was eight months following the date the contract went into effect. We believe that the plaintiffs are entitled to recover interest on the damages which the evidence shows they sustained, namely, the sum of $23,600.00 from October 1, 1947.

An entry may be prepared in accordance with this opinion, finding upon the issues joined in favor of the plaintiffs and against the defendants and finding the amount to which the plaintiffs are entitled to recover to be in the sum of $23,600.00 with interest thereon at six percent per annum from the first day of October, 1947, and their costs.